UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO.,

**ORIGINAL**

*0⅃F*
*⅃M*

**MEMORANDUM & ORDER**

             Plaintiff,

    -against-

ROBERT SCOTT SCHEPP, M.D., et al.,

             Defendants.

ACTION I
Case No. 07-CV-1353 (FB) (SMG)

------------------------------------------------------------x
------------------------------------------------------------x
TRAVELERS INDEMNITY COMPANY,

             Plaintiff,

    -against-

ROBERT SCOTT SCHEPP, M.D., et al.,

             Defendants.

ACTION II
Case No. 07-CV-1820 (FB) (SMG)

------------------------------------------------------------x

*Appearances:*
*For the State Farm Plaintiff:*
BARRY I. LEVY, ESQ.
Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, New York 11556

*For the Travelers Indemnity Plaintiff:*
KEIR N. DOUGALL, ESQ.
Katten Munchin Rosenman LLP
575 Madison Avenue
New York, New York 10022

*For the Schepp Defendants:*
EDWARD K. BLODNICK, ESQ.
Edward K. Blodnick & Associates, P.C.
1205 Franklin Avenue, Suite 110
Garden City, New York 11530

*For the MCC Defendants:*
KENNETH C. HENRY JR., ESQ.
Kenneth C. Henry Jr. PC
900 Merchant Concourse, Suite 303
Westbury, New York 11590

*For the Sonn Defendants:*
MATTHEW J. CONROY, ESQ.
Matthew J. Conroy & Associates, P.C.
350 Old Country Road, Suite 106
Garden City, New York 11530

*For the Paramount Defendants:*
JEFFREY I. BAUM, ESQ.
1325 Franklin Avenue, Suite Suite 290
Garden City, NY 11530

**BLOCK, Senior District Judge:**

Before the Court is a motion for abstention filed by defendants Robert Scott Schepp, M.D., Deajess Medical Imaging, P.C., Boston Post Medical Imaging, P.C., Preferred Medical Imaging, P.C. and Aviva Medical Imaging, P.C. (collectively, the "Schepp Defendants")[1] on the principal grounds that this case involves a novel state-law issue and a parallel state-court proceeding exists.[2] For reasons stated below, the motion is denied.

## I[3]

Plaintiffs State Farm Mutual Automobile Insurance Co. ("State Farm") and Travelers Indemnity Company ("Travelers") collectively seek recovery of over $7.2 million that defendants obtained from plaintiffs by fraudulently seeking and receiving "no-fault" insurance benefits for radiology services; plaintiffs also seek a declaration that they are not obligated to pay defendants for fraudulently submitted claims that have not yet been paid. *See* Compl. ¶ 1. The claims are based upon New York law, which prohibits professional

---

[1]Defendants Hillel Sher, MRI Global Imaging Services, Inc., and Forum Medical Management, Inc. (collectively, the "Sher Defendants") moved by letter dated October 25, 2007 to join in the motion. *See* Docket Entry #52. The Court grants this motion to the extent the Sher Defendants seek to join in the arguments presented by the Schepp Defendants.

[2]The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[3]All factual references contained in Part I are taken from the allegations of the State Farm complaint in Action I; Travelers' complaint in Action II is in all respects (except regarding damages) the same. The two actions have been consolidated for all purposes. *See* Docket Entry # 47.

2

corporations from billing for or collecting "no-fault" benefits if they were fraudulently incorporated; this can result from, *inter alia*, persons not licensed as physicians owning or controlling a professional service corporation authorized to practice medicine, or deriving economic benefit from employing or supervising physicians to provide medical services. Furthermore, New York law prohibits payment of "no-fault" benefits to anyone other than the patient or his or her actual healthcare provider.

## A. 1999 to 2004

Beginning in 1999, defendant Hillel Sher ("Sher") masterminded a scheme to defraud automobile insurance companies in New York by billing them for more than $30 million in "no-fault" benefits which the insurance companies were not obligated to pay. Specifically, Sher, who has never been a licensed physician, and his management companies, defendants MRI Global Imaging Services, Inc. ("MGI") and Forum Medical Management, Inc. ("FMM"), compensated Dr. Schepp for falsely representing to state licensing authorities that Dr. Schepp was the owner and operator of Preferred Medical Imaging, P.C. ("Preferred"), Dejaess Medical Imaging, P.C. and Boston Post Road Medical Imaging, P.C. (collectively the "First Generation P.C.s") when in fact the Sher Defendants were the true owners and operators of these entities.

To conceal the true ownership of the First Generation P.C.s, which provided radiology services in Brooklyn, Queens and the Bronx, MGI and FMM entered into management agreements with each of the First Generation P.C.s that required the First Generation P.C.s to pay either MGI or FMM $212,000 per month regardless of the income generated by the First Generation P.C.s; also, the First Generations P.C.s entered into costly

equipment and facility lease agreements with MGI and FMM. Between 2000 and 2004, the First Generation P.C.s paid over $45 million to MGI and FFM for management, billing and collection services; however, MGI and FFM never provided these services. During this same period, Sher also caused the First Generation P.C.s to sell their accounts receivable to the MCC Defendants;[4] under this arrangement, MGI and FMM were paid 70 cents on the dollar for receivables purchased by the MCC Defendants. In order to collect on the receivables, which consisted of "no-fault" benefit payments from insurance companies, the MCC Defendants falsely represented that the claims were still held by the First Generation P.C.s.

In late 2004, the relationship between Dr. Schepp and Sher deteriorated and Dr. Schepp notified Sher of his intention to terminate their arrangement at the end of 2004; in response, Sher physically locked Dr. Schepp out of the First Generation P.C.s' offices; as a result, the First Generation P.C.s ceased performing radiology services.

## B. Post-2004 Period

Freed from his relationship with Sher, beginning on January 1, 2005, Dr. Schepp and defendant Stanley Sonn ("Sonn"), a chiropractor who has never been licensed to practice medicine, entered into a scheme similar to that surrounding the First Generation P.C.s: Dr. Schepp represented to state licensing officials that he was the owner of Aviva Medical Imaging, P.C. ("Aviva"), when in fact Aviva was owned and operated by Sonn and his management company, Multiple Billing Systems, LLC ("MBS") (collectively, the

---

[4]The "MCC Defendants" are: Medical Capital Corporation, Medical Capital Holdings, Inc., Medical Capital Management, Inc., MCC Special Purposes Corporation III, and Carlmont Capital Special Purpose Corporation II.

"Sonn Defendants"). As with the First Generation P.C.s, Aviva entered into expensive agreements with MBS to perform management, marketing, billing and collection services to syphon money from Aviva to Sonn. While the complaints are not entirely clear, it appears that Aviva ceased operations on or about April 30, 2006.

While the First Generation P.C.s apparently ceased operations at the end of 2004, one of them, Preferred, once again began fraudulently billing plaintiffs for radiology services in or about March of 2006. In this incarnation, Dr. Schepp continued to be listed as the owner of Preferred, but the P.C. was truly owned and operated by defendants John Sansone ("Sansone") and Michael Mitzelmaker ("Mitzlemaker"), neither of whom were ever licensed as a physician. Sansone and Mitzlemaker used their management company, defendant Paramount Express Imaging, Inc. ("Paramount"), to siphon revenue generated by Preferred to themselves.[5]

## C. State Action

The Schepp Defendants ask the Court to abstain because State Farm and Travelers are defendants in a state declaratory judgment action (the "Declaratory Judgment Action") which the Schepp Defendants argue is parallel to this action. That action, which was filed prior to the instant case, is part of consolidated proceedings pending in New York State Supreme Court, Nassau County, and entitled *AIU Insurance Company, et al. v. Deajess Medical Imaging, P.C., et al.*, Index No. 11935/05 (the "*AIU* Proceedings").

While the *AIU* Proceedings consist of four actions, State Farm and Travelers

---

[5]Sansone, Mitzelmaker and Paramount will be collectively referred to as the "Paramount Defendants."

are parties only to the Declaratory Judgment Action, which was commenced in August of 2006 by the Schepp Defendants[6] against State Farm, Travelers and 23 additional insurance companies.[7] In that action, the Schepp Defendants seek a declaratory judgment that the First Generation P.C.s were (1) properly incorporated, (2) entitled to bill for and collect "no-fault" benefits, (3) did not sell their account receivables to third parties, and (4) did not split fees with third parties. The Declaratory Judgment Action does not cover the post-2004 period.[8] While many of their co-defendants have asserted counterclaims, State Farm and

---

[6]Aviva, one of the Schepp Defendants, is not a party to the Declaratory Judgement Action, presumably because that case only concerns conduct from 1999-2004 and Aviva did not begin operations until January 1, 2005. Thus, all references to the "Schepp Defendants" as it relates to the Declaratory Judgment Action do not include Aviva.

[7]The other three cases in the *AIU* Proceedings are: (1) An action initiated in July of 2005 by six insurance companies, none of which include State Farm or Travelers, against the Schepp Defendants and the majority of the Sher Defendants. Its allegations virtually mirror those made by State Farm and Travelers here with respect to the 1999 to 2004 period; however it does not cover post-2004 activities nor are FMM (one of Sher's management companies), the MCC Defendants, the Sonn Defendants, or the Paramount Defendants parties. (2) A similar action initiated in July of 2006 by five other insurance companies, which also do not include State Farm or Travelers, against the Schepp Defendants, the Sher Defendants and the MCC Defendants; this action also does not cover the post-2004 time period, nor are the Sonn Defendants or Paramount Defendants parties. (3) A second declaratory judgment action commenced in December of 2006 by the Schepp Defendants, seeking relief identical to that in the Declaratory Judgment Action against nine additional insurance companies.

[8]After State Farm and Travelers initiated the present case, the Schepp Defendants brought a declaratory judgment action in state court concerning the post-2004 period against State Farm, Travelers and three additional insurance companies; however, that action was dismissed as to State Farm and Travelers pursuant to C.P.L.R. 3211(a)(4) because it was initiated after the instant case. *See Preferred Medical Imaging, P.C., et al. v. Progressive Insurance Co., et. al.*, 9942/07 (N.Y. Sup. Ct. April 4, 2008) (Order); *see also* C.P.L.R. 3211(a)(4) (permitting dismissal "as justice requires" if "there is another action pending between the same parties for the same cause of action in a court of . . . the United States").

Travelers have not.

The four state-court cases were consolidated for discovery and trial in early 2007, and the state court has ruled on several motions, including denying motions to dismiss by State Farm and Travelers in the Declaratory Judgment Action. In June of 2007, the state court issued an order setting forth the manner in which trial in the consolidated *AIU* Proceedings will proceed: defendants in the Declaratory Judgment Action will be the last parties to present their case at trial.

While discovery has progressed in both the instant case and the *AIU* Proceedings, discovery in the state-court cases, including the Declaratory Judgment Action, was stalled for several months due to the liquidation of three parties; as a result, discovery has progressed further in the instant case: according to State Farm and Travelers, as of April 22, 2008, most of the insurance companies in the state court case have not exchanged documents or provided responses to interrogatories, while the majority of document discovery and depositions of some witnesses, including a portion of Dr. Schepp's deposition, have been completed in this case.[9]

## II

Abstention, while permissible in certain circumstances, "remains the exception, not the rule." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (citations and quotation marks omitted); *see also Deakins v.*

---

[9]Counsel for State Farm stated in a letter dated April 22, 2008, that he was "advised that [plaintiff insurance companies in the *AIU* Proceedings] intend to file a motion [in state court] seeking to have the [*AIU* Proceedings] stayed pending the outcome of this action, in particular, because this action has advanced so much further than the State Court litigation." Docket Entry 115 at 3.

*Monaghan*, 484 U.S. 193, 203 (1988) ("This Court repeatedly has stated that the federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." (citations and quotation marks omitted)).

In support of their motion, the Shepp Defendants rely on three theories of abstention: (1) *Burford* abstention, which "applies only in narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden state-law issues would serve a significant local interest and would render federal court review inappropriate." 32A Am. Jur. 2d Federal Courts § 1074; *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), (2) *Brillhart/Wilton* abstention, which affords district courts broad discretion in determining whether to entertain declaratory judgment actions when a parallel state action is proceeding, *see Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and (3) *Colorado River* abstention, which allows for dismissal in "exceptional circumstances" where parallel state-court litigation exists; this form of abstention rests "not on considerations of state-federal comity or on avoidance of constitutional decisions . . . , but on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 14-15 (1983) (citations and quotation marks omitted; alteration in original); *see Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

## A. *Burford* Abstention

The Schepp Defendants argue that this case presents a novel issue of state

law, namely application of *State Farm v. Mallela*, 4 N.Y.3d 313 (2005);[10] therefore, the Court should abstain under *Burford*.

*Burford* abstention, however, does not apply in this case because the doctrine prevents federal courts from "interfer[ing] with the proceedings or orders of state *administrative agencies*" in certain circumstances, *New Orleans Public Service*, 491 U.S. at 361 (emphasis added), and the present action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency.

The Schepp Defendants' argument that State Farm and Travelers seek to disrupt New York's efforts to regulate professional corporations and the "no-fault" insurance system is without merit. *See id.* at 362 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy.").

The Court notes that the presence of a novel state law issue alone is not a basis for abstention, *see Meredith v. City of Winter Haven*, 320 U.S. 228, 234-235 (1943) ("[D]enial of [a party's] opportunity [to assert their rights in federal court] merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act.");

---

[10]In *Mallela*, the New York Court of Appeals held that under New York's "'no-fault' insurance laws . . ., insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims." *Mallela*, 4 N.Y.3d at 319. The Schepp Defendants argue that the present case is novel because the Court of Appeals did not provide guidance to determine under what circumstances a lay person illegally controls and/or owns a professional corporation and when such illegal control and/or ownership renders an enterprise fraudulently incorporated.

instead, in such cases the district court must "try to predict how a state court would rule." *Salve Regina College v. Russell,* 499 U.S. 225, 241 (1991). Moreover, there exists a precise mechanism for determining in the federal litigation how the high court of the State of New York would decide a novel issue of state law; the circuit court may certify the issue to the State Court of Appeals.[11] *See* N.Y. Const., Art. VI, § 3(9) (requiring the State Court of Appeals to allow, *inter alia,* "a court of appeals of the United States" to certify novel issues of state law); *see also Lehman Bros. v. Schein,* 416 U.S. 386, 390-391 (1974) (while certification "where there is doubt as to local law" is not obligatory, "[i]t does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism"); *Arizonans for Official English v. Arizona,* 520 U.S. 43, 76 (1997) ("Certification procedure, in contrast [to abstention], allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.").

## B. *Brillhart/Wilton* Abstention

*Brillhart/Wilton* abstention, which only applies to declaratory judgment actions, also merits little discussion: it does not apply because plaintiffs seek, in addition to declaratory relief, damages based on theories of fraud and unjust enrichment. *See Vill. of Westfield v. Welch's,* 170 F.3d 116, 125 n.5 (2d Cir. 1999) (noting that *Brillhart/Wilton* did not apply because "the federal action did not seek purely declaratory relief"); *see also Southwind Aviation, Inc. v. Bergen Aviation, Inc.,* 23 F.3d 948, 951 (5th Cir. 1994) ("[T]he

---

[11]While New York does not permit certification from a district court, "[m]ost states also permit questions to be certified from federal district courts." 17A Wright & Miller, *Federal Practice and Procedure* §4248 (3d 2007).

district court erred as a matter of law in classifying [plaintiff's] suit as a 'declaratory judgment action.' Although some of the relief sought by plaintiff is declaratory in nature, plaintiff also requests coercive remedies for the breach of contract in the form of damages, attorney's fees, and injunctive relief. Inclusion of these coercive remedies indisputably removes this suit from the ambit of a declaratory judgment action.").

## C. *Colorado River* Abstention

### 1. *The State-Court Action Is Not Parallel*

A condition precedent to *Colorado River* abstention is the presence of a parallel state action. *See Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

Here, it is clear that a portion of this case, plaintiffs' claims against the Schepp Defendants concerning the 1999-2004 time period, is parallel to the Declaratory Judgment action because it concerns the same parties and relief as the Declaratory Judgment Action. This, however, is insufficient to render the *proceedings* parallel because (1) none of the defendants here, other than the Schepp Defendants, are parties to the Declaratory Judgment action, *see Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) (holding state court case not parallel where parties in the federal action were absent from the state action); *Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.*, 17 F.3d 46, 50 (2d Cir. 1994) (noting that parallelism requires identity of parties and that "[s]imilarity of parties is not the same

as identity of parties"), and (2) the issues and relief sought in the Declaratory Judgment Action are not the same since it does not concern post-2004 activities.

The Schepp Defendants argue that plaintiffs could bring the non-parallel parties and claims into the Declaratory Judgment Action; that argument, however, does not affect the Court's analysis of whether the two proceedings are *currently* parallel. *See Crawley v. Hamilton County Com'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("While it may be true . . . that [the state court action] could be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court action], *as it currently exists*, is a parallel, state-court proceeding. Because it is not, we need not undertake the [*Colorado River* analysis]." (emphasis added)). Thus, the Declaratory Judgment Action is not parallel to this action and *Colorado River* abstention is not warranted.

### 2. Assuming Parallelism, Abstention Is Unwarranted

Even assuming that the claims concerning 1999-2004 were sufficient to trigger analysis under *Colorado River*, abstention as to those claims would still be unwarranted.

"To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Vill. of Westfield*, 170 F.3d at 121 (citation and quotation marks omitted). The factors are: "(1) the assumption of jurisdiction by either court over any *res* or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Id.*

The first factor is inapplicable here as no *res* or property is at stake.

The second factor favors retention since the federal and state courthouses are equally convenient, and no party has contended otherwise.[12] *See Vill. of Westfield*, 170 F.3d at 122 ("We have held that where the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." (citation and quotation marks omitted)).

The third factor – avoiding piecemeal litigation – is neutral. Regardless of whether the Court abstains, State Farm and Travelers would be faced with litigating in state and federal court at the same time: if the Court abstained, they would litigate against the Schepp Defendants in state court and the remaining defendants in federal court; if the court did not abstain, they would still be faced with litigating against the Schepp Defendants in state court, but would litigate against all defendants in federal court. In either scenario, neither the state nor federal court would be able to completely resolve all issues between the parties, even though abstaining would allow the Schepp Defendants, save Aviva (which is not a party to the Declaratory Judgment Action), to cease their involvement in this case.

While the Declaratory Judgment Action was filed first, the Supreme Court has cautioned against applying the fourth factor rigidly: "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress had been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. While the state

---

[12]The Court notes that the First Generation P.C.s were located in Brooklyn, Queens and the Bronx, all of which are more proximate to the federal courthouse in Brooklyn Heights than the state courthouse in Mineola.

court has denied motions to dismiss by both State Farm and Travelers, discovery in that proceeding was stalled, resulting in federal discovery progressing further; it appears that as a result, resolution of the parties' dispute on the merits – either by summary judgment or trial – may be reached sooner here than in the Declaratory Judgment Action.[13] Thus, this factor weights against abstention.

In respect to the fifth factor, "although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Vill. of Westfield*, 170 F.3d at 124. Assuming, as the Schepp Defendants argue, that application of Mallela involves novel state law issues, this factor would weigh in favor of abstention. *See Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (abstaining where, *inter alia*, basis of claim depended on "a novel state law theory"). " I n analyzing the sixth factor . . . , federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and *prompt* resolution of the issues between the parties." *Vill. of Westfield*, 170 F.3d at 124 (emphasis added). Because of the discovery stay in the Declaratory Judgment Action and the state court's order dictating that State Farm and Travelers would be among the last parties to present their case at trial, the Court cannot presume that the state court can provide a prompt resolution; therefore, this factor weighs against abstention. *See id.* ("The district court was well aware of the slow pace of the state court proceeding. Based on the record before it,

---

[13]The Schepp and MCC Defendants have already stated their intent to move for summary judgment and a pre-motion conference on their anticipated motion was held on March 28, 2008. *See* Docket Entries ## 85, 108.

the district court had no discretion to assume that the state court was an adequate vehicle for the 'prompt resolution' of the issues.").

Thus, even assuming parallelism, the *Colorado River* factors do not support abstention because the only factor favoring abstention is the possible presence of novel state law issues, which standing alone cannot be the basis for abstention. *See Meredith,* 320 U.S. at 236 ("Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine.").

In sum, the "exceptional circumstances that justify the surrender of federal court jurisdiction," *Vill. of Westfield,* 170 F.3d at 124, under *Colorado River* are absent from this case because the Declaratory Judgment Action is not parallel and, even if it were, the *Colorado River* factors do not tip the balance in favor of abstention. *See Moses T. Cone,* 460 U.S. at 16 (*"Only the clearest of justifications will warrant dismissal."* (quoting *Colorado River,* 424 U.S. at 181-19) (emphasis in original)).

## CONCLUSION

For the reasons stated above, the Court denies the motion for abstention.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 7, 2008